**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **LANCE MEADORS** | * | **CIVIL ACTION NO. 3:18-cv-01007** |
| | * | |
| **VERSUS** | * | **JUDGE BRIAN A. JACKSON** |
| | * | |
| **ANTONIO P. D'AGOSTINO,** | * | **MAGISTRATE JUDGE** |
| **BUCHANAN HAULING AND** | * | **ERIN WILDER-DOOMES** |
| **RIGGING, INC., NATIONAL** | * | |
| **INTERSTATE INSURANCE** | * | |
| **COMPANY, and XYZ INSURANCE** | * | |
| **COMPANY** | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S OMNIBUS MOTION IN LIMINE**

**NOW INTO COURT**, through undersigned counsel, comes plaintiff, LANCE MEADORS ("Mr. Meadors" or "Plaintiff"), who respectfully moves this Honorable Court to exclude from trial evidence of the following:

(1) Plaintiff's criminal records and convictions, because this evidence is not relevant to this personal injury case and, even if relevant, is more prejudicial than probative;

(2) Defendants' allegations that Mr. Meadors engaged in illegal drug use, including specious claims that Mr. Meadors has abused methamphetamines, because these allegations are unfounded and more prejudicial than probative;

(3) Any reference to prison or incarceration in Mr. Meadors' medical records, because it is irrelevant and more prejudicial than probative if a past injury occurred in prison;

(4) Defendants' expert orthopedic surgeon's testimony and report regarding Mr. Meadors' low back injury and treatment because his opinion is based on an unreliable source;

(5) Defendants' expert life care planner's testimony and report because her opinion is based on an unreliable medical opinion that contradicts her report; and

(6) Defendants' expert neuropsychologist from offering a medical diagnosis or opinion on medical causation because he is not a medical doctor.

## I. FACTUAL BACKGROUND

On October 22, 2018, Defendant Antonio D'Agostino crashed his eighteen-wheeler into Plaintiff Lance Meadors' vehicle on the I-10 Mississippi River bridge near Baton Rouge.

Seven years before the crash, Mr. Meadors had pled no contest to drug possession charges and to operating a clandestine laboratory for the purpose of manufacturing a controlled substance. He was sentenced to five years incarceration.[1] While imprisoned, he was at one point assaulted and struck in the face with a lock.

In this personal injury case, Defendants have made clear their intent to attack Mr. Meadors' character at trial in an inflammatory and prejudicial manner, labeling him a criminal and methamphetamine addict.[2] To these ends, Defendants may seek to introduce Plaintiff's criminal records, employment disciplinary documents, and child custody filings. Defendants are also likely to introduce medical records from after Mr. Meadors was assaulted in prison. For the reasons more fully explained below, these records are irrelevant, prejudicial, and likely to confuse the jury.

Additionally, Defendants have hired several expert witnesses in this litigation who seek to give opinion testimony based on information that in unreliable or beyond their expertise. Their testimony should be limited or excluded to comply with the Federal Rules of Evidence.

## II. LAW AND ANALYSIS

Under the Federal Rules, evidence is inadmissible if it is irrelevant to the matter.[3] Evidence is relevant only if (1) it has a tendency to make a fact more or less probable than it would be

---

[1] Twenty-First Judicial District Court Records ("Meadors Court Records"), attached *in globo* as Exhibit "A".
[2] *E.g.* Memorandum in Support of Motion in Limine to Exclude Testimony of Dr. Jeffery Lewine and Evidence or Testimony Concerning Diffusion Tensor Imaging, Rec. Doc. 33-1, p. 12.
[3] FED. R. EVID. 402.

without the evidence, and (2) the fact is of consequence in determining the action.[4] Even if evidence is relevant, the Court may exclude it if the probative value of the evidence is substantially outweighed by a danger of: "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[5]

    **A.    The Court should exclude evidence of Plaintiff's criminal convictions because they are irrelevant to and, even if relevant, are more prejudicial than probative.**

Evidence of Mr. Meadors' past convictions from almost nine years ago now should be excluded from evidence because they are irrelevant to this personal injury case. Furthermore, even if slightly relevant, any probative value this evidence might have would be substantially outweighed by a danger of unfair prejudice and confusing the issues.

Under Federal Rule of Evidence 404, "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."[6] Moreover, even when evidence of a criminal conviction is used to attack a witness' character for truthfulness, under Rule 609 the evidence is only admissible in two instances. First, where the elements of the crime required a dishonest act or false statement, and second, where the crime was punishable by death or at least one year imprisonment and the evidence also satisfies Rule 403.[7] Evidence of arrests or prosecutions is inadmissible.[8]

In *Stepter v. Verele*, a car crash case like the matter at hand, the United States District Court for the Eastern District of Louisiana excluded evidence of the plaintiff's conviction for drug and firearm possession as highly prejudicial and with little probative value.[9] The defendants argued

---

[4] FED. R. EVID. 401.
[5] FED. R. EVID. 403.
[6] FED. R. EVID. 404(b).
[7] FED. R. EVID. 609(a).
[8] *Swindle v. Livingston Par. Sch. Bd.*, No. CIV.A. 06-837-JJB, 2012 WL 5363805, at *1 (M.D. La. Oct. 30, 2012).
[9] *Stepter v. Verele*, No. CIV.A. 10-1799, 2011 WL 2473949, at *3 (E.D. La. June 22, 2011).

that the plaintiff's criminal history and failure to disclose his "social history of drug use" suggested a "pattern of dishonesty that speaks to the credibility of his testimony."[10] The court rejected this, holding, "This Court is not satisfied that [the plaintiff's] convictions for possession of drugs and a firearm in 1996 speaks to [his] honesty and credibility as a witness in a personal injury lawsuit."[11] The *Stepter* court, relying on a similar decision, *McAvey v. Lee*, in the United States Court of Appeals for the Fifth Circuit, reasoned that the plaintiff's drug charges bore no connection to his personal injury lawsuit.[12] The court concluded that admitting the criminal records would "have a highly prejudicial effect with little prohibitive value and would serve only to mislead the jury."[13]

Similarly, in *Swindle v. Livingston Parish School Board*, an action for damages under 42 U.S.C. § 1983, the plaintiff sought to exclude evidence of her two convictions for driving while intoxicated.[14] This Court found that the convictions were not relevant to the issues of the case. Further, applying the Rule 403 balancing test, this Court held that the evidence would result in unfair prejudice, confusing the issues, and misleading the jury.[15]

As in *Stepter*, *Swindle*, and *Lacey*, evidence of Mr. Meadors' prior criminal convictions would be unfairly prejudicial and would carry little to no probative value in this personal injury lawsuit. Instead, this evidence would likely mislead the jury by implying that "people who do certain bad things are not to be trusted to tell the truth."[16] Like *Stepter*, Mr. Meadors was convicted

---

[10] *Id*.
[11] *Id*.
[12] *Id*. (*citing McAvey v. Lee*, 260 F.3d 359, 374 (5th Cir. 2001).
[13] *Stepter*, at *3.
[14] *Swindle*, 2012 WL 5363805 at *1.
[15] *See also Lacey v. Arkema Inc., et al.*, 3:10-cv-00669, 2014 WL 1327792, at *2 (M.D. La. March 31, 2014) (excluding convictions for marijuana possession as irrelevant to lost wages, not probative of malingering, and of limited impeachment value).
[16] *See United States v. Johnson*, 542 F.2d 230, 234–35 (5th Cir. 1976) ("Rule 609 was crafted to apply in those cases where the conviction is offered only on the theory that people who do certain bad things are not to be trusted to tell the truth").

4

of drug charges almost nine years ago.[17] These crimes do not require elements of dishonesty or false statements. Although Mr. Meadors was convicted by more than one year of imprisonment, these charges are highly prejudicial and have no connection to his personal injury lawsuit. They This evidence should therefore be excluded under Rule 609(a)(1)(B).

Critically, under Defendants' own expert testimony, Mr. Meadors's credibility is not a central issue in this case. Impeachment evidence is therefore unlikely to make any fact more or less likely. The facts of the collision are not in dispute, and the damage to Mr. Meadors' vehicle alone shows that this was a very serious collision.[18] As for Plaintiff's medical treatment, Defendants' own expert witness, Dr. James Butler, agreed with Mr. Meadors' treating physicians that his left shoulder and knee surgeries were medically necessary.[19] Finally, Defendants' expert neuropsychologist—who specializes in recognizing malingering—testified that he does not believe that Mr. Meadors is malingering with respect to any of his treatment.[20] Accordingly, evidence of Mr. Meadors' criminal convictions, even if used for impeachment purposes, would have minimal probative value to balance against the substantial risk of prejudice.

This Court should therefore exclude evidence of Mr. Meadors' criminal convictions.

**B.     Defendants should be barred from alleging that Mr. Meadors has abused methamphetamines because these unfounded claims are irrelevant, highly prejudicial, and founded on weak and inadmissible evidence.**

The Court should also exclude allegations that Mr. Meadors has abused methamphetamines or other drugs, because this not relevant to the facts of this case and, even if relevant, would be highly prejudicial and hardly probative because of the lack of evidence to support these claims. Mr. Meadors' criminal convictions are only for drug possession and manufacture, not consumption

---

[17] *See generally* Court Records, Ex. A.
[18] Photograph, attached *hereto* as Exhibit "B".
[19] Dr. James Butler Deposition Transcript, dated April 20, 2020, attached *hereto* as Exhibit "C", pp. 27, 31.
[20] Dr. Kevin Bianchini Deposition Transcript, dated March 3, 2020, attached *hereto* as Exhibit "D", p. 48.

or abuse. Defendants have pointed to other pieces of supposed evidence for their allegations of drug abuse, but both are weak and insufficiently probative to overcome the danger of unfair prejudice and confusing the jury.

### 1. *Evidence of drug use is not relevant to truthfulness.*

This Court should bar Defendants from alleging that Mr. Meadors has abused drugs, including methamphetamines, because, even Defendants had evidence to prove these claims, they would not be relevant to his truthfulness. Although Federal Rule of Evidence 608(b) allows a party to cross-examine a witness regarding specific instances to attack their truthfulness, "[p]rior instances of drug use are not relevant to truthfulness for purposes of Fed. R. Evid. 608(b)."[21] The United States Fifth Circuit has held that, generally, "drug use is not probative of truthfulness."[22] Courts limit a party's ability to impeach a witness for alleged drug use to whether the use of drugs affects the witness' ability to testify at trial or to perceive the underlying events.[23]

In *Beary v. Deese*, the Eastern District of Louisiana excluded evidence of a plaintiff's history of arrests, drug use, and disciplinary action because the evidence was not probative of the plaintiff's character for truthfulness. In *Beary*, the plaintiff's motion *in limine* sought to prohibit the defendant from cross-examining him regarding his prior arrest, suspension from the practice of law, and surrounding disciplinary proceedings stemming from his history of drug use.[24] The defendants argued that this evidence was admissible under Rule 608 because those specific instances of misconduct were probative of the plaintiff's character for truthfulness.[25]

---

[21] *Beary v. Deese*, No. CV 16-15757, 2018 WL 3455544, at *4 (E.D. La. July 17, 2018) *(citing U.S. v. Sellers*, 906 F.2d 597, 602 (11th Cir. 1990)).
[22] *United States v. McDonald*, 905 F.2d 871, 875 (5th Cir. 1991).
[23] *Beary*, at *4 *(citing United States v. Carroll*, 53 Fed. App'x 785, 787 (7th Cir. 2002) (holding that a defendant "could not attack [the witness'] credibility by asking the jury to infer that [the witness] should not be believed just because he is a person who has engaged in these activities [drug use] in the past.").
[24] *Id.* at *3.
[25] *Id.*

The court excluded the evidence, holding that "Plaintiff's illegal drug possession charge is not probative of his character for truthfulness or untruthfulness, and is therefore inadmissible under Federal Rule of Evidence 608(b)."[26] The *Beary* court further noted, "The Fifth Circuit has established a precedent of excluding evidence of prior drug use when such evidence is submitted for Rule 608 purposes."[27] The court concluded that it "must exclude Defendants' proposed evidence of Plaintiff's prior drug-related charges and Defendants are barred from addressing such charges when conducting the cross-examination of Plaintiff."[28]

Similarly, in *Jordan v. ENSCO Offshoring Company*, a maritime personal injury case, the court barred testimony and evidence of a plaintiff's alleged "drug seeking behavior" as prejudicial.[29] The defendants argued that the plaintiff engaged in "drug seeking behavior, manipulating and deceiving his treating physicians to obtain medication" and that this evidence was relevant because it "goes to his credibility and . . . whether he was experiencing any pain and injury as he claims in this suit."[30] The court rejected this argument, finding that "such evidence would unfairly prejudice the Plaintiff and distract the jury from the fundamental issues in this case i.e. whether plaintiff suffered injury . . . and, if so, to what extent."[31] The court clarified that, although Defendants may cross-examine the plaintiff regarding his medications prescribed *after* the injury, "[t]he Defendant may not, however, question witnesses or elicit testimony about Plaintiff's alleged drug addiction or drug seeking behavior."[32]

---

[26] *Id.* at *4.
[27] *Id.*
[28] *Id.*; *see also Knox v. City of Monroe*, No 07-606, 2009 WL 936965, at * (W.D. La. April 6, 2009) (excluding evidence of witness' nine years of drug abuse as irrelevant).
[29] *Jordan v. ENSCO Offshore Co.*, No. CV 15-1226, 2016 WL 8265537, at *1 (E.D. La. May 23, 2016).
[30] *Id.*
[31] *Id.*
[32] *Id.*

As in *Beary* and *Jordan*, this Court should exclude any allegations that Mr. Meadors has abused drugs, and should bar Defendants from making these claims on cross-examination because the facts of this case—a motor vehicle collision—have nothing to do with illegal narcotics. Defendants have never alleged that Plaintiff was intoxicated by drugs or alcohol at the time of the crash. Nor does any evidence suggest that Mr. Meadors consumed any illegal substances on the day of the collision. Instead, Defendants have made clear their intention to inflame the jury against Mr. Meadors by reference to his past drug use.[33]

### 2. *Even if relevant, Defendants' evidence to support their allegations is stale, circumstantial, and risks unfair prejudice and confusing the jury.*

Even if the Court finds that allegations of Mr. Meadors' past drug use are relevant to some issue, Defendants' "evidence" to support these claims, specifically that he abused methamphetamines, is weak, inadmissible, and risks unfair prejudice and confusing the jury as to the issues of this case.

As this very Court has itself noted, a major function of Federal Rule of Evidence 403 is to exclude a "matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect."[34] In this context, prejudice means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."[35]

The scientific evidence in this case shows that Mr. Meadors is not a drug abuser, and specifically has not abused methamphetamines. In his analysis of Mr. Meadors' diffusion tensor imaging ("DTI") data, Dr. Jeffrey Lewine, Ph.D. found that Plaintiff showed high fractional

---

[33] Defendants' Opposition to Plaintiff's Motion to Extend Scheduling Order Deadlines, Rec. Doc. 28, p. 6.
[34] *United States v. Glenn*, No. CV 15-00138-BAJ-RLB, 2017 WL 6054881, at *2 (M.D. La. Dec. 7, 2017) (*citing United States v. Pace*, 10 F.3d 1106, 1116 (5th Cir. 1993)).
[35] FED. R. EVID. 403, Advisory Committee's Notes.

8

anisotropy ("FA") values.[36] Dr. Lewine testified, however, that methamphetamine and chronic drug abuse are only associated with *low* FA values.[37] Even Defendants' own neuropsychology expert reported that Mr. Meadors' "character scales" did not suggest substance abuse.[38]

While ignoring this recent, scientific evidence, Defendants point to three stale and vague documents to insinuate drug abuse. First, Defendants reference Mr. Meadors' criminal convictions. Mr. Meadors did plead no contest to charges that include methamphetamine possession and manufacture. But nothing in these charges suggests that Plaintiff consumed or abused methamphetamines or other drugs. In fact, during his sentencing, Mr. Meadors was not required to submit to a substance abuse program.[39] And as discussed above, these convictions should be excluded from evidence under Rule 609.[40]

Next, Defendants point to a petition by Mr. Meadors filed during child custody proceedings in 2014.[41] This petition states that "while he has had some problems in the past, he has remained drug free for over two (2) years and has maintained steady employment as an electrician for approximately the last two (2) years."[42] Mr. Meadors' "problems" are not explained in the petition, nor does it identify any specific drugs to which it refers. If this petition is admitted at trial, Plaintiff would be forced to either delve deep into the highly personal facts of this child custody dispute or, perhaps worse, let the jury use their imaginations. Moreover, the petition makes clear that Mr. Meadors has been drug-free since at least 2012.[43]

---

[36] Neuroscientific Report on Quantitative MRI Volumetric and Diffusion Tensor Imaging prepared by Dr. Jeffrey Lewine, Ph.D., attached *hereto* as Exhibit "E", p. 2 (nonpaginated).
[37] Dr. Jeffery Lewine Deposition Transcript, dated February 28, 2020, attached *hereto* as Exhibit "F", pp. 19-20.
[38] Neuropsychological Evaluation Report prepared by Dr. Kevin Bianchini, attached *hereto* as Exhibit "G", p. 18.
[39] Meadors Court Records, Ex. A.
[40] *See Sonnier v. Honeycutt*, No. CIV.A. 12-292-BAJ-RL, 2015 WL 222317, at *2 (M.D. La. Jan. 14, 2015).
[41] Petition for Avowal and Custody (the "Custody Record"), attached hereto as Exhibit "H", p. 2, ¶ 12.
[42] *Id.*
[43] *Id.*

Lastly, Defendants drudge up an untitled document, from an unknown person, with the handwritten notation "Failure to comply with company substance abuse policy." If submitted as evidence, this document would constitute hearsay because it would be an out-of-court statement offered for the truth of the matter asserted.[44] Additionally, like the child-custody petition, this document is fatally vague and provides almost no details. Finally, the only date included in this document is December 14, 2008—twelve years before the current trial date and ten years before the collision at issue in this matter.

Each of these three pieces of "evidence" upon which Defendants base their allegations of drug abuse against Mr. Meadors are old, cold, circumstantial, and vague. None of these items show that Mr. Meadors ever abused methamphetamines, and nothing whatsoever suggests that Mr. Meadors has used illicit drugs of any kind since at least 2012. Taken collectively, Defendants will turn this personal injury case into a "mini trial" on whether or not Mr. Meadors is, or ever was, a drug abuser. A jury could easily lose sight of the true issues in this case. Rule 403 clearly prohibits this scant and cumulative probative evidence, dragged in by the heels for the sake of its prejudicial effect. This Court should therefore exclude any allegations that Mr. Meadors has abused methamphetamines or other drugs, as well as the three documents referenced above.

**C.     Any references to Mr. Meadors' incarceration in his past medical records should be redacted as irrelevant and prejudicial.**

Plaintiff anticipates that Defendants will introduce Mr. Meadors' medical records from the Lallie Kemp Hospital Emergency Department, regarding his treatment following an assault he suffered while incarcerated.[45] These medical records reference Mr. Meadors' incarceration several

---

[44] *See Sonnier*, 2015 WL 222317, at *3 ("Disciplinary reports are out-of-court statements and, to the extent that they are offered for the truth of the matters asserted therein, constitute inadmissible hearsay under Rules 801(c) and 802.").
[45] Lallie Kemp Hospital Emergency Department Nursing Record, attached *hereto* as Exhibit "I".

times. For example, the "presenting complaint" section of the records contains a handwritten notation stating "33 y/o M. assaulted in jail cell . . . ."[46]

The fact that Mr. Meadors was incarcerated at the time of this injury only serves to unfairly inflame the jury against him. To this end, if Defendants introduce these records they should be barred from referring to these records as "prison" or "jail" records and the portions that reference Mr. Meadors' incarceration should be redacted. Additionally, any witness who would testify about this injury and treatment should be prohibited from referencing Mr. Meadors' incarceration.

### D. The testimony of Defendants' expert orthopedist regarding Plaintiff's lumbar treatment should be excluded because his opinion is not based on sufficient data.

This Court should prohibit Defendants' expert orthopedic witness, Dr. James Butler, from testifying as to Plaintiff's lumbar injury and treatment because Dr. Butler's opinion is supported by unreliable facts. Specifically, he issued his report under the mistaken opinion that Mr. Meadors' lumbar pain had resolved after the crash.

Federal Rule of Evidence 702 allows an expert to give opinion testimony if (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (2) "the testimony is based on sufficient facts or data"; (3) "the testimony is the product of reliable principles and methods"; and (4) "the expert has reliably applied the principles and methods to the facts of the case."[47] A trial court must ensure that the underlying facts and data upon which an expert's opinion is based are in and of themselves reliable.[48] As the Fifth Circuit has repeatedly held, "[f]undamentally unsupported opinions offer no expert assistance to the jury and should be excluded.[49] "Where the expert's opinion is based on

---

[46] *Id.* at p. 5 (unpaginated).
[47] FED. R. EVID. 702.
[48] *Daubert v. Merrell Dow Pharmaceutical, Inc.*, 509 U.S. 579, 597 (1993).
[49] *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005); *see also In re Pool Prod. Distribution Mkt. Antitrust Litig.*, 166 F. Supp. 3d 654, 675 (E.D. La. 2016).

insufficient information, the analysis is unreliable."[50] The party seeking to admit the expert testimony bears the burden of showing that the expert's findings and conclusions are reliable.[51]

In this case, Dr. Butler's opinion regarding Plaintiff's lumbar injury and treatment is unreliable because he has based his opinion on a misunderstanding that Mr. Meadors' back pain had completely and permanently resolved by the time Dr. Butler evaluated him on January 16, 2019.[52] However, the questionnaire that Mr. Meadors filled out at Dr. Butler's office lists "low back pain" under the section stating "Please describe all problems and symptoms you are seeing the physician for today."[53] Furthermore, one of Mr. Meadors' treating physicians reported only two weeks later, on January 30, 2019, that Mr. Meadors was suffering from low back pain, which had been present for three months.[54] Indeed, Mr. Meadors continued treating his lower back pain with for months after his evaluation with Dr. Butler.

It is unclear why Dr. Butler stated in his report that Mr. Meadors was not suffering from back pain. Dr. Butler has conceded that he may have misunderstood Plaintiff at his evaluation.[55] Dr. Butler also admitted that his conclusions would change if Mr. Meadors' back pain had not resolved by January 30, 2019.[56] Because Dr. Butler's opinion regarding Mr. Meadors' lumbar injuries and treatment is founded on his misunderstanding that Mr. Meadors' low back pain had permanently and completely resolved, the sources underlying his opinion are unreliable.

Accordingly, the Court should exclude from trial his opinion as to Mr. Meadors' lumbar injury and treatment.

---

[50] *In re Pool Prod. Distribution*, 166 F. Supp. 3d at 662 *(citing Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009)).
[51] *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).
[52] Dr. James C. Butler Report, attached *hereto* as Exhibit "J", p. 1.
[53] Dr. Butler Deposition Transcript, Ex. C, p. 24-25, 34.
[54] Dr. Barrett Johnston Medical Report, dated January 30, 2019, attached *hereto* as Exhibit "K".
[55] Dr. Butler Deposition Transcript, Ex. C, 34-35.
[56] *Id*. at p. 35.

**E. The reports by Defendants' life care planning and vocational rehabilitation expert, Stacie Nunez, should be excluded as based on unreliable sources because they rely on Dr. Butler's opinion regarding Mr. Meadors' lumbar treatment.**

Dr. Butler's false report that Mr. Meadors' lumbar pain resolved has also poisoned the opinions of Defendants' life care planning and vocational rehabilitation expert, Stacie Nunez. Her report therefore cannot help the jury and should be excluded from trial because her own opinion is based on Dr. Butler's mistaken conclusions regarding Plaintiff's low back injury and treatment.

Although "courts should not be lured by arguments challenging the weight of expert testimony rather than admissibility, [courts] must also not allow expert testimony that is so fundamentally unsupported that it cannot possibly help the factfinder."[57] In *Rea v. Wisconsin Coach Lines, Inc.*, a car crash case, the defendants sought to exclude the plaintiff's expert witness, Dr. George Cravens, from testifying as to future medical care.[58] The defendants' primary argument was that "Dr. Cravens' new opinion is not based on sufficient facts or data so as to be reliable."[59] Ultimately, the court found that the plaintiff could not account for the facts and data upon which Dr. Craven based his opinion, and excluded his affidavit regarding future medical costs.

Then, importantly, the court also excluded the plaintiff's life care planner from testifying as to the plaintiff's future medical costs because the life care planner had based her own opinions on Dr. Craven's testimony. Specifically, the court held that, "to the extent that any of [the life care planner's] testimony relies on Dr. Cravens' opinion as expressed in the affidavit, the Court finds that such testimony is unreliable and unhelpful to the factfinder."[60]

---

[57] *Rea v. Wisconsin Coach Lines, Inc.*, No. CIV.A. 12-1252, 2014 WL 4981803, at *6 (E.D. La. Oct. 3, 2014) (*citing Vitterbo v. Dow Chemical Co.,* 826 F.2d 420, 422 (5th Cir. 1987)).
[58] *Id.* at *4.
[59] *Id.*
[60] *Id.* at *6.

As in *Rea*, this Court should exclude Defendant's life care planning and vocational rehabilitation expert, Stacie Nunez, because her future medical cost analysis is based on an unreliable source—Dr. James Butler—and will not help the fact finder. Ms. Nunez is not a medical doctor, did not consult Mr. Meadors' treating physicians, and did not find it important to do so.[61] Ms. Nunez only consulted with Dr. Butler and Dr. Bianchini.[62] Dr. Bianchini is a neuropsychologist, not a medical doctor.[63] In other words, Dr. Butler is the only medical doctor with whom Ms. Nunez consulted in preparing her report, and he is her sole source of information regarding Mr. Meadors' lumbar injury and treatment.

As outlined above, Dr. Butler's opinion regarding Mr. Meadors' low back pain was based on a mistaken and unfounded belief that Mr. Meadors' lumbar injury resolved by January 2019.[64] This alone makes his testimony unreliable, and therefore taints Ms. Nunez's own testimony also.

Notably, Ms. Nunez's report also directly contradicts Dr. Butler's report and testimony. In the report, she writes, "In regard to the lumbar area, Dr. Butler recommended one bilateral medial branch block. Dr. Butler explained if Mr. Meadors experiences a positive relief which is more than 50%, then it would be reasonable to perform a single bilateral lumbar rhizotomy."[65]

However, Dr. Butler testified in his deposition that he does not recommend any treatment on Mr. Meador's lumbar spine.[66] Also in his deposition, Dr. Butler did not recall his consultation with Ms. Nunez.[67] When confronted with this contradiction, Dr. Butler did not think that Ms. Nunez misunderstood him[68] and testified that his opinion had not changed.[69]

---

[61] Stacie Nunez Deposition Transcript, dated February 13, 2020, attached *hereto* as Exhibit "L", p. 16-17.
[62] *Id*. at p. 18.
[63] Dr. Bianchini Deposition Transcript, Ex. D, p. 13.
[64] *Supra*, § D, pp. 11-13.
[65] Vocational Rehabilitation Report/Life Care Plan prepared by Stacie Nunez, attached *hereto* as Exhibit "M", p. 4.
[66] Dr. Butler Deposition Transcript, Ex. C, p. 37.
[67] *Id*. at p. 22.
[68] *Id.* at p. 40.
[69] *Id*. at p. 39.

If Dr. Butler's opinion did not change, and Ms. Nunez did not misunderstand him, Dr. Butler must simultaneously believe that Mr. Meadors requires lumbar treatment and that he does not require lumbar treatment. These opinions are clearly contradictory and unreliable.

As in *Rea*, Ms. Nunez based her analysis as to Mr. Meadors' future medical costs on an unreliable source. Because the facts underlying her testimony are unreliable, Ms. Nunez's own opinion is unreliable and will not help a fact finder. Therefore, the Court should prohibit her from testifying and should exclude her report from evidence, at least as to lumbar treatment.

### F. Defendant's expert neuropsychologist should be excluded from offering a medical opinion, including as to causation, because he is not a medical doctor.

The expert neuropsychologist that Defendants have hired, Dr. Kevin Bianchini, is not a medical doctor and is not qualified to offer a medical opinion or his opinion as to medical causation. Given his expertise, his opinion testimony should therefore be limited to Mr. Meadors' psychological symptoms.

*Daubert v. Merrell Dow Pharmaceuticals* "imposes a special obligation upon a trial judge to 'ensure that any and all scientific testimony . . . is not only relevant, but reliable.'"[70] An expert witness' testimony should be excluded if the district court "finds that the witness is not qualified to testify in a particular field or on a given subject."[71] Hence, the Fifth Circuit has held that a clinical psychologist is not qualified to make a medical diagnosis, order medical tests or studies, or testify as to a medical issue which is "plainly beyond the witness's expertise in psychology."[72]

For example, in *McCook v. Unum Life Insurance Company of America*, the Eastern District of Louisiana limited the plaintiff's treating psychologists from rendering medical diagnoses.[73] The

---

[70] *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147 (1999) (*quoting Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589, 113 (1993)).
[71] *Wilson v. Woods,* 163 F.3d 935, 937 (5th Cir. 1999).
[72] *Edmonds v. Illinois Cent. Gulf R. Co.*, 910 F.2d 1284,1287 (5th Cir. 1990).
[73] 2017-cv-7835, 2020 WL 2812853, *7-8 (E.D. La. May 29, 2020).

15

plaintiff sought to introduce testimony from her psychotherapist and psychologist, diagnosing her with "an unspecified neurocognitive disorder."[74] The Court found that "[a]s psychologists, [the experts] are not qualified to render an opinion as to possible physical causes of Plaintiff's psychological ailments."[75] The Court cited several cases for the proposition that "a psychologist could not attribute observations about the plaintiff's emotions and relationships to 'medical or organic causes. He may not label them brain damage or brain injury. That is a medical decision.'"[76]

The court also found that the value of the psychologists' testimony was limited to "the progress and severity of Plaintiff's symptoms."[77] However, "[the psychologists'] testimony is of no use in discovering the source of those symptoms inasmuch as the source is of a physical, and not psychological, nature."[78] The Court clarified that these restrictions would apply to neuropsychologists as well.[79]

As in *McCook*, Defendants' expert witness in this matter, Dr. Bianchini, is a neuropsychologist and not a medical doctor. Under *Daubert*, this Court should therefore limit Dr. Bianchini from offering a medical diagnosis. As outlined in *McCook*, a medical diagnosis in this brain-injury case would include attributing Plaintiff's emotions or psychological symptoms to a medical or organic cause, testifying that Plaintiff does or does not have brain damage or a brain injury, or otherwise attempting to discover or exclude a physical source of Plaintiff's injuries. In other words, Dr. Bianchini's expertise qualifies him to offer an opinion as to the progress and severity of Mr. Meadors' psychological symptoms, but not the medical cause of those symptoms, such as mild traumatic brain injury or concussion.

---

[74] *Id*. at *7.
[75] *Id.*
[76] *McCook*, 2020 WL 2812853, at *7.
[77] *Id*. at *8.
[78] *Id.*
[79] *Id*. at *10, n.42.

In this case, Dr. Anne Foundas, a neurologist and medical doctor, diagnosed Mr. Meadors with a brain injury, in this case "post-concussive syndrome".[80] Because Dr. Bianchini is not a medical doctor, he is not qualified to dispute Dr. Foundas' diagnosis, and his testimony should be strictly limited to the nature and severity of Mr. Meadors' psychological symptoms.

Because Mr. Meadors' injury concerns his brain, special care should be taken to distinguish between his psychological symptoms (i.e. his mind and emotions) and his neurological injury (i.e. his brain). Dr. Bianchini's report, dated January 2020, blurs this distinction and risks confusing the jury. For example, in his report, Dr. Bianchini states, "It is currently well understood that the most important information needed for understanding the ultimate functional outcome from any given brain injury is information that pertains to the acute neurological characteristics of the injury. This includes loss or alteration of consciousness."[81] Dr. Bianchini also opines that Plaintiff did not suffer any brain injury, stating "Altogether, this [evidence that Mr. Meadors did not lose consciousness] suggests that the patient did not sustain even the mildest form of traumatic brain injury, a concussion."[82] In his conclusion, Dr. Bianchini again ventures improperly into medical diagnosis, stating, "Altogether, it is the opinion of the undersigned that this patient does not have residual cognitive or other symptoms as a result of brain damage or brain injury."[83]

These statements blend psychological symptoms, medical diagnosis, and medical causation. These blurred statements could confuse a jury into believing that Dr. Bianchini is qualified to diagnose—or not diagnose—Mr. Meadors with a brain injury. Because Dr. Bianchini is not a medical doctor, he cannot make this diagnosis.

---

[80] Neurological Report prepared by Dr. Anne Foundas, attached *hereto* as Exhibit "N", p. 3.
[81] Dr. Bianchini Report, Ex. G, at p. 6.
[82] *Id*. at p. 20.
[83] *Id*.

17

Dr. Bianchini's report also offers his opinion on medical causation, stating, "It is the role and responsibility of the neuropsychologist to determine the most likely cause of a given deficit in the context of the medical records and available research on the disease/injury."[84] However, as made clear in *McCook*, because Dr. Bianchini is not a medical doctor, he cannot offer his opinion on the medical causation of Mr. Meadors' brain injury or symptoms of traumatic brain injury.

To prevent confusion for the jury, this Court should limit Dr. Bianchini's testimony to the nature, extent, and severity of Mr. Meadors' psychological symptoms. Dr. Bianchini should be prohibited from offering a medical diagnosis, an opinion on medical causation, or disputing the medical diagnosis of Mr. Meadors' treating medical neurologist, Dr. Foundas.

Additionally, Dr. Bianchini's report offers his opinion that drug use, specifically methamphetamine abuse, can cause brain damage. According to Dr. Bianchini, "Methamphetamine is a known neurotoxin and its use can cause brain damage."[85] Again, Dr. Bianchini is not a medical doctor and cannot give an opinion on what does or does not cause brain damage. The Court should therefore also exclude this opinion from trial.

These allegations of drug abuse by Dr. Bianchini are especially inappropriate in this case because his opinion is merely rank speculation. Mr. Meadors denied treatment for drug or alcohol in his evaluation with Dr. Bianchini.[86] Dr. Bianchini never directly asked Mr. Meadors if he abused drugs,[87] did not see mention of drug use in Mr. Meadors' medical records,[88] and even reported that Mr. Meadors' "character scales" did not suggest substance abuse.[89] At a minimum, Dr. Bianchini

---

[84] *Id.* at p. 13.
[85] *Id.* at p. 20.
[86] *Id.*
[87] *Id.*
[88] *Id.*
[89] *Id.* at p. 18.

should be prohibited from speculating that Mr. Meadors has abused methamphetamines or other drugs, as well as from any possible medical consequences of such abuse.

## III. CONCLUSION

This Court should exclude from evidence Plaintiff's criminal and prison records, allegations of drug abuse or reference to him as a drug addict, and refences to his incarceration in his medical records. The Court should also limit or exclude the testimony of Defendants' expert orthopedic surgeon, life care planner, and neuropsychologist.

Plaintiff's criminal records and convictions should be excluded as irrelevant to this personal injury case and as highly prejudicial. Defendants' allegations of drug abuse are also irrelevant because they are not probative of truthfulness. And even if otherwise relevant, the basis for the claims are vague, old, and inadmissibly hearsay. Additionally, the Court should redact any reference to prison or incarceration in Mr. Meadors' medical records, because the fact that an injury occurred in prison is irrelevant and prejudicial.

Furthermore, Defendants' expert orthopedist's testimony regarding Mr. Meadors' lumbar injury and treatment is not supported by a reliable source because it is based on his misunderstood belief that Mr. Meadors' low back pain had permanently resolved, even though Mr. Meadors noted on Dr. Butler's questionnaire that he was suffering from lumbar pain.

Defendants' life care planning expert's testimony is also not supported by reliable sources because her opinion is based on Dr. Butler's own mistaken medical opinion, which also contradicts her report.

Finally, Defendant's expert neuropsychologist is not qualified to offer a medical opinion or opinion testimony on medical causation because he is not a medical doctor.

For these reasons, the Court should grant Plaintiff's Motion *in Limine* and should prohibit the Defendants from introducing the listed evidence, or at a minimum, should limit the use of the evidence as suggested above.

Respectfully submitted:
**EGENBERG, APLC**

/s/ Bradley Egenberg
BRADLEY EGENBERG (#29848)
ZACKORY K. WOOD (#37923)
650 Poydras Street, Suite 2525
New Orleans, Louisiana 70130
Telephone: (504) 229-5700
Facsimile: (504) 617-7911
Email: zackory@egenberg.com
***Attorneys for Plaintiff Lance Meadors***