UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

LANCE MEADORS                                         CIVIL ACTION

VERSUS

ANTONIO P. D'AGOSTINO, ET AL.                NO. 18-01007-BAJ-EWD

RULING AND ORDER

This Order addresses Defendants' **Motion *In Limine* To Exclude Testimony Of Dr. Jeffrey Lewine And Evidence Or Testimony Concerning Diffusion Tensor Imaging (Doc. 33)**. Plaintiff opposes the Motion. (Doc. 40). For the reasons stated herein, Defendants' Motion will be denied.

I.  RELEVANT BACKGROUND

This is a car crash case. Plaintiff alleges that on October 22, 2018, he was driving his Nissan automobile westbound over the Mississippi River Bridge when he was unexpectedly struck by an 18-wheeler driven by Defendant Antonio D'Agostino. At the time of the crash, Mr. D'Agostino was working for Defendant Buchanan Hauling and Rigging, Inc. The third Defendant, National Interstate Insurance Company, is Buchanan's insurer.

Plaintiff contends that he suffered a traumatic brain injury (TBI) in the collision (among other injuries). To support this allegation, Plaintiff offers the testimony of his treating neurologist, Dr. Anne Foundas, and his treating neuropsychologist, Dr. Susan Andrews. Dr. Foundas observed Plaintiff in January

1

2019 and diagnosed him with post-concussive syndrome, marked by memory and attention lapses, and two episodes of lost consciousness after coughing. (Doc. 40-3 at 3). Dr. Andrews observed Plaintiff in April 2019, seconded Dr. Foundas' diagnosis of post-concussive syndrome, and added a diagnosis of post-traumatic stress disorder. (Doc. 40-6 at 13-15).

Additionally, Plaintiff seeks to offer testimony from Dr. Jeffery Lewine, a neuroscientist who reviewed brain imaging data collected from Plaintiff in March 2019. Relevant here, Dr. Lewine would testify regarding results of Plaintiff's diffusion tensor imaging (DTI) tests, which indicate abnormally high fractional anisotropy (FA) values in Plaintiff's brain, a possible indication of TBI. Dr. Lewine would offer his opinion regarding whether Plaintiff's FA values are consistent with a diagnosis of TBI.

Defendants filed the instant Motion on March 6, 2020, seeking to exclude Dr. Lewine's testimony and any evidence concerning DTI analysis. (Doc. 33). Defendants' objective is transparent: They want to prevent "Dr. Lewine or anyone else [from] diagnos[ing] Plaintiff with a traumatic brain injury … as a result of this accident." (Doc. 33-1 at 1).

A jury trial is set for December 7, 2020.

## II. ANALYSIS

Defendants offer two arguments for excluding Dr. Lewine's DTI analysis and testimony: (1) this evidence, if allowed, will confuse and mislead the jury, in violation of Federal Rule of Evidence ("Rule") 403; and/or (2) Dr. Lewine's testimony, which is based on the DTI analysis, fails the standards for expert testimony set forth in

2

Rule 702 and *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The Court considers each argument in turn.

### i. Rule 403

#### a. Standard

Rule 403 authorizes the Court "to exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The U.S. Court of Appeals for the Fifth Circuit has repeatedly admonished that "Rule 403's scope is narrow," and that its "application … must be cautious and sparing." *United States v. Fields*, 483 F.3d 313, 354 (5th Cir. 2007) (quoting *United States v. Pace*, 10 F.3d 1106, 1116 (5th Cir. 1993)). "Its major function is limited to excluding matters of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *Id.*

#### b. Discussion

Defendants' sole complaint under Rule 403 is that Dr. Lewine "cannot testify the DTI findings were more likely than not caused by the accident." (Doc. 33-1 at 8). Defendants reason that if Dr. Lewine cannot himself establish that Plaintiff's elevated FA values are the result of the crash, then, necessarily, the jury will be misled and confused. (*Id.*). According to Defendants, the jury will be spellbound, compelled to "believe [Dr. Lewine's] testimony must be important because it is dressed in a 'neuroscientific perspective.'" (*Id.* at 8-9).

The Court is not persuaded, and holds the jury in higher esteem than the

3

Defendants. Dr. Lewine's DTI findings and testimony are obviously relevant to the issue of whether, and to what extent, Plaintiff has suffered a brain injury resulting from the crash. As in any other case, it is for the jury to decide whether Plaintiff's alleged brain injury was *caused* by the crash. *McConnell v. Hirschbach Motor Lines, Inc.*, No. 11-cv-00153-SDD-SCR, 2013 WL 5651301, at *1 (M.D. La. Oct. 15, 2013) ("the determination of causation is one for the jury"). Here, the jury will not decide causation based only on Dr. Lewine's DTI analysis because Plaintiff's attending physicians—Dr. Foundas and Dr. Andrews—have also submitted evidence indicating a brain injury. (*See* Doc. 40-3 at 3; Doc. 40-6 at 13-15). Indeed, it is worth noting that Dr. Foundas specifically recommended that Plaintiff undergo DTI analysis based on her January 2019 observation. (Doc. 40-3 at 4). In this light, Dr. Lewine's analysis is merely one additional data point for the jury to consider when making its determination.

On this record, and as in other cases involving DTI analysis, the Court determines that Dr. Lewine's findings and testimony are not unfairly prejudicial, misleading, or cumulative. And any potential confusion regarding whether Dr. Lewine is offering an opinion of causation can be cleared up through cross-examination and, if need be, a limiting instruction. Defendants' request to exclude this evidence under Rule 403 is denied. *Cf. Marsh v. Celebrity Cruises, Inc.*, No. 17-cv-21097-UU, 2017 WL 6987718, at *3 (S.D. Fla. Dec. 15, 2017) (rejecting defendants' argument that permitting plaintiff's expert to testify regarding the results of DTI analysis would lead to confusion regarding plaintiff's alleged mild TBI: "Dr. York's

expert determination would certainly assist the jury in determining injury and causation in this case"); *Roach v. Hughes*, No. 13-cv-00136-JHM, 2016 WL 9460306, at *3 (W.D. Ky. Mar. 9, 2016) (same: "Many of Defendants complaints go to the weight that the jury may afford to the evidence offered, not the admissibility of the evidence, and can be adequately addressed through cross-examination.").

### ii. Rule 702 and *Daubert*

#### a. Standard

The admissibility of expert testimony is governed by Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, which require the Court to serve as a gatekeeper, ensuring all scientific testimony is relevant and reliable. This gatekeeping role extends to all expert testimony, whether scientific or not. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

Under Rule 702, the Court must consider three primary requirements in determining the admissibility of expert testimony: 1) qualifications of the expert witness; 2) relevance of the testimony; and 3) reliability of the principles and methodology upon which the testimony is based. *Fayard v. Tire Kingdom, Inc.*, No. 09-171-BAJ, 2010 WL 3999011, at *1 (M.D. La. Oct. 12, 2010). In *Daubert*, the U.S. Supreme Court listed factors to consider when determining reliability of expert methodology, to include "whether a theory or technique can be (and has been) tested, whether it has been subjected to peer review and publication, the known or potential rate of error, and the existence and maintenance of standards controlling the technique's operation, as well as general acceptance." *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997) (internal alterations omitted; quoting *Daubert*, 509 U.S.

5

at 593–594). This list is merely illustrative, however, and the Supreme Court has also emphasized that "the *Daubert* analysis is a 'flexible' one, and that 'the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (quoting *Kumho Tire*, 526 U.S. at 150). "The district court's responsibility is 'to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Id.* (quoting *Kumho Tire*, 526 U.S. at 152).

Notably, *Daubert* motions are *not* appropriate when they attack "the underlying facts upon which [an expert's] opinion was based. That approach is not contemplated under a *Daubert* challenge." *In re Katrina Canal Breaches Consol. Litig.*, No. 10-866, 2012 WL 4328354, at *1 (E.D. La. Sept. 20, 2012). Rather, the reliability of data underlying an expert's opinion goes to the weight of the evidence and is subject to cross-examination, but should not serve as a basis for its exclusion. *See Tyler v. Union Oil Co. of California*, 304 F.3d 379, 393 (5th Cir. 2002) ("Unocal instead attempts to show that the underlying data—provided by Unocal—was itself unreliable. This is an issue that Unocal could—and did—raise in cross-examination."); *In re Katrina Canal Breaches*, 2012 WL 4328354, at *1 ("Courts should not be lured by arguments disguised as *Daubert* challenges that actually attack the weight of the expert testimony, not its admissibility."). The validity or

correctness of an expert's conclusions are issues for the jury to determine *after* the *Daubert* analysis. *See Pipitone*, 288 F.3d at 250 ("The fact-finder is entitled to hear Dr. Coco's testimony and decide whether it should accept or reject that testimony after considering all factors that weigh on credibility, including whether the predicate facts on which Dr. Coco relied are accurate.").

Ultimately, the Court has broad discretion in deciding whether to admit expert opinion testimony. *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998). "Notwithstanding *Daubert*, the Court remains cognizant that 'the rejection of expert testimony is the exception and not the rule.'" *Barnett v. Nat'l Cont'l Ins. Co.*, No. 3:17-CV-153-JWD-EWD, 2019 WL 126732, at *3 (M.D. La. Jan. 8, 2019) (quoting *Johnson v. Samsung Elecs. Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011)).

With these principles in mind, the Court turns to the Defendants' *Daubert* challenge.

### b. Discussion

Defendants purport to challenge each prong of the Rule 702/*Daubert* analysis, contending that Dr. Lewine is not qualified, (Doc. 33-1 at 9-11), his DTI analysis and testimony are not relevant, (*id.* at 11-13), and his methods are unreliable, (*id.* at 13-16). Each prong is discussed in turn. *See Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 201 (5th Cir. 2016) ("[A] district court must create a record of its *Daubert* inquiry and articulate its basis for admitting expert testimony." (alterations and quotation marks omitted)).

### 1. Dr. Lewine is qualified to testify and offer opinions regarding DTI analysis.

Plaintiff offers Dr. Lewine as an expert in neuroscience to testify regarding the purpose and scope of brain imaging and DTI analysis, to review the DTI analysis performed on Plaintiff in this case, and to offer opinions regarding whether Plaintiff's DTI data may indicate a TBI. (Doc. 40 at 9; Doc. 40-5 at 12).

The Court has reviewed Dr. Lewine's curriculum vitae (Doc. 40-8) and finds him to be highly qualified for this task. Dr. Lewine earned Bachelor's, Master's, and Doctoral degrees in Neuroscience from the University of Rochester, with additional post-doctoral training in Biophysics at the Los Alamos National Laboratory. Over the course of his 30-year career as a neuroscientist, Dr. Lewine has held research posts at multiple prestigious universities, laboratories, and government agencies. Dr. Lewine's honors, publications, and presentations span 15 pages of single-space text, and he has been granted nearly $10,000,000 in state, federal, and philanthropic funding for his research. For nearly a decade, he has served as Professor of Translational Neuroscience at The Mind Research Network in Albuquerque, New Mexico, and also as the Principal Scientist at MINDSET Consulting Group, and has offered testimony regarding brain imaging and DTI data in multiple criminal and civil proceedings. (Doc. 40-5 at ¶¶ 8-9).

Defendants do not even attempt to challenge Dr. Lewine's neuroscience credentials. Instead, they complain that Dr. Lewine is not a medical doctor and therefore cannot offer a medical diagnosis that Plaintiff suffers from TBI. (Doc. 33 at 11). Defendants' complaint misses the mark because Dr. Lewine is expressly not

8

offered for the purpose of providing a medical opinion or diagnosis. (Doc. 40-5 at ¶11). Instead, as stated, he is engaged to evaluate Plaintiff's DTI data and to determine from a neuroscience perspective whether these data are within or outside a normal range and consistent with a diagnosis of TBI. And while Dr. Lewine's conclusions—alongside the conclusions of Dr. Foundas and Dr. Andrews—may support a finding of TBI, that finding and its causal connection to the crash is for the jury to decide.

### 2. Dr. Lewine's DTI analysis and testimony is relevant to the issue of whether Plaintiff sustained a brain injury in the crash.

Next, Defendants purport to challenge the relevance of Dr. Lewine's DTI analysis and testimony, insisting that it will not assist the jury, is not based on sufficient facts, and is not "tied to" the facts of this case. (Doc. 33-1 at 11). Essentially, Defendants repurpose their Rule 403 objection, complaining once again that Dr. Lewine's DTI analysis is unhelpful because Dr. Lewine cannot testify that the crash caused Plaintiff's elevated FA values. Defendants bolster their argument by pointing to a number of factors Dr. Lewine did not consider in rendering his report, including Plaintiff's past head trauma and past drug use. (*Id.* at 12-13).

Once again, Defendants' argument is unavailing. As stated above, Dr. Lewine's DTI findings and testimony are obviously relevant to the issue of whether Plaintiff has suffered a brain injury. In this light, Defendants' relevance objection is actually an attack on the underlying facts upon which Dr. Lewine's conclusions are based. Again, "[t]hat approach is not contemplated under a *Daubert* challenge," because it goes to the weight of Dr. Lewine's testimony, not the admissibility. *In re Katrina Canal Breaches*, 2012 WL 4328354, at *1. On cross-examination, Defendants may, of

course, challenge the reliability of the data underlying Dr. Lewine's testimony. Ultimately, however, it is for the jury to decide the validity or correctness of Dr. Lewine's conclusions. *See Tyler*, 304 F.3d at 393; *Pipitone*, 288 F.3d at 250; *In re Katrina Canal Breaches*, 2012 WL 4328354, at *1.

### 3. DTI analysis is based on reliable principles and methodology.

Finally, Defendants question the principles and methodology underlying DTI analysis, citing "prevailing literature" indicating divergent opinions concerning the value of DTI in identifying TBI. (Doc. 33-1 at 13-16). Remarkably, in this regard, Defendants completely ignore the great weight of authority *rejecting* this same attack on DTI analysis, including recent authority from *this* District. Just last year, this Court admitted expert testimony regarding DTI analysis over a reliability objection, stating:

> Defendants' broader attack on Kaufman's reliance on DTI is simply unsupported. Furthermore, a host of other cases have specifically rejected *Daubert* challenges to the reliability of DTI. In *Andrew v. Patterson Motor Freight, Inc.*, No. 6:13-CV-814, 2014 WL 5449732 at * 9 (W.D. La. Oct. 23, 2014), the court concluded, "[i]n sum, the evidence submitted shows DTI has been tested and has a low error rate; DTI has been subject to peer review and publication; and DTI is a generally accepted method for detecting TBI." (record citations omitted). *See also, Marsh v. Celebrity Cruises, Inc.*, No. 1:17-cv-21097, 2017 WL 6987718 at *4 (S.D. Fla. Dec. 15, 2017); *Roach v. Hughes*, No. 4:13-CV-00136, 2016 WL 9460306 at *3 (W.D. Ky. Mar. 9, 2016); *White v. Deere & Co.*, No. 13-cv-02173, 2016 WL 462960 at *4 (D. Colo. Feb. 8, 2016); *Ruppel v. Kucanin*, No. 3:08-CV-591, 2011 WL 2470621 at *6-11 (N.D. Ind. June 20, 2011); *Booth v. Kit, Inc.*, Civ. No. 06-1219, 2009 WL 4544743 (D.N.M. Mar. 23, 2009).

*Barnett v. Nat'l Cont'l Ins. Co.,* No. 3:17-CV-153-JWD-EWD, 2019 WL 126732, at *6 (M.D. La. Jan. 8, 2019); *see also Ward v. Carnival Corp.*, No. 17-24628-CV, 2019 WL

1228063, at *8 (S.D. Fla. Mar. 14, 2019) ("[A] basic Westlaw search on the subject shows that numerous courts, facing challenges identical to the arguments set forth in Defendant's Motion, found DTI data to be reliable, helpful, and admissible.").

Defendants' failure to even acknowledge this clear consensus of authority is troubling and may be justifiably deemed "a substantial oversight; at worst, it is a violation of Defendants['] duty of candor to the Court."[1] The Court reminds Defendants and Defendants' counsel that *everyone* appearing in this District shall comply with the Local Rules—which include, by adoption, Rule 3.3 of the Rules of Professional Conduct of the Louisiana State Bar Association—and that willful noncompliance is cause for disciplinary action. M.D. La. LR 83(b)(6) & (10).

In any event, the Court rejects Defendants' challenge to the reliability of DTI, and joins the consensus view that DTI has been tested and has a low error rate; DTI has been subject to peer review and publication; and DTI is a generally accepted

---

[1] Defendants are not the first to engage in this kind of "hide the ball" tactic in their efforts to discredit DTI analysis. As noted by Plaintiff, Magistrate Judge Torres of the U.S. District Court for the Southern District of Florida recently addressed the exact same situation, and was equally troubled by the defendant's guile:

> It is curious that Defendant would submit a brief to this Court without acknowledging that DTI data can and has been found to be admissible and an accepted methodology upon which an expert could base his or her opinion. The failure to disclose these cases (or otherwise address them) is, at best, a significant oversight, and at worst, a violation of Defendant's duty of candor to the court. The specter of impropriety is raised when one considers the fact that another court in this District, dealing with the exact type of challenge to DTI data raised in an almost identical case, made this same point to another cruise line when it failed to disclose a multitude of cases where such data was deemed admissible. See Marsh, 2017 WL 6987718, at *3, n.2 ("It is worth noting that Celebrity failed to disclose the fact that DTI testimony has been previously admitted by a multitude of federal courts. In fact, Celebrity did not cite a single case in which DTI evidence was admitted at trial.").

*Ward v. Carnival Corp.*, No. 17-24628-CV, 2019 WL 1228063, at *8 (S.D. Fla. Mar. 14, 2019).

11

method for detecting TBI. *See Barnett*, 2019 WL 126732, at *6 (citing authorities); *Ward*, 2019 WL 1228063, at *8 (citing authorities). And again, Defendants' concerns regarding divergent views in the scientific community can be adequately addressed at cross-examination.

Defendants' Rule 702/*Daubert* challenge will also be denied.

### III.  CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' Motion *In Limine* To Exclude Testimony Of Dr. Jeffrey Lewine And Evidence Or Testimony Concerning Diffusion Tensor Imaging (Doc. 33) is **DENIED**.

Baton Rouge, Louisiana, this 29th day of October, 2020

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**